THOMPSON *v.* LAKE SUPERIOR LUMBER CORPORATION.

1. WORKMEN'S COMPENSATION—STATUTE OF LIMITATIONS—NOTICE OF INJURY—CLAIM FOR COMPENSATION.

Provisions of statute of limitations, contained in the workmen's compensation act, were satisfied where notice of injury, occurring in 1940, was given to employer within three months after it happened and an oral claim was made by the employee to the employer's personnel manager within six months after the occurrence of the injury (2 Comp. Laws 1929, § 8431).

2. SAME—FINDING OF DEPARTMENT—EVIDENCE—CERTIORARI.

An award of workmen's compensation based upon competent testimony must be affirmed on review by certiorari.

3. SAME—REPORT OF INJURY—EYE INJURY—SUBSEQUENT LOSS OF VISION.

Where employee suffered an injury to his left eye in May, 1940, but evidence showed loss of vision did not occur until November, 1944, although employer's report of noncompensable injury was proper as of the time it was filed in 1940 where employee lost only 1 day of time, employer was also required to file a report as to loss of vision in such eye in 1944 after being advised thereof (2 Comp. Laws 1929, § 8456, as amended by Act No. 245, Pub. Acts 1943).

Appeal from Department of Labor and Industry. Submitted June 3, 1947. (Docket No. 9, Calendar No. 43,581.) Decided October 13, 1947.

Earl O. Thompson presented his claim against Lake Superior Lumber Corporation, employer, and Employers Mutual Liability Insurance Company, insurer, for loss of vision sustained while in its

employ.  Award to plaintiff.  Defendants appeal.
Affirmed.

*John B. Bennett (Ray Derham,* of counsel), for
plaintiff.

*Walsh & Munro (E. Dean Alexander,* of counsel),
for defendants.

BUSHNELL, J.  This appeal, in the nature of cer-
tiorari, from the department of labor and industry
raises questions of whether defendant Lake Supe-
rior Lumber Corporation filed a proper report and
whether plaintiff Earl O. Thompson's claim was
seasonably made.

When Thompson entered the employ of defendant
in 1939, his eyesight was normal.  On January 24,
1940, while trimming the butt of a tie, a piece of
wood about 2 inches long caught on the saw and
struck plaintiff's left eye.  This injury was imme-
diately reported to the defendant's personnel man-
ager, Francis C. Pidgeon.  Thompson was treated
by the defendant's physician, Dr. McHugh, since de-
ceased, who told him that his optic nerve was bruised
but that his vision would clear up.  Plaintiff only
lost one day's work, and defendant reported the
matter as a noncompensable accident.

Thompson claims that in May of 1940 he spoke to
Pidgeon about his injury and was told that he would
be taken to Ironwood sometime, presumably for the
purpose of having his eye examined by a specialist.
According to Thompson, nothing was done about the
matter and he continued at his regular work.  Pid-
geon testified that he did not recall any claim for
compensation having been made by Thompson in
1940.  Thompson was cross-examined by the deputy
commissioner and testified as follows:

"*Q.* Now, in talking with Mr. Pidgeon in the spring of 1940, that was asking for medical aid—you wanted your eye examined?

"*A.* Yes.

"*Q.* Tell us what you said to him about compensation?

"*A.* I asked him if I wasn't entitled to some sort of compensation if my eye didn't clear up.

"*Q.* At that time you didn't know what condition your eye was in?

"*A.* I really didn't know what condition my eye was in. I was under the impression from what Doctor McHugh told me that it was going to clear up.

"*Q.* Then between that conversation of May, 1940, and the fall of 1943, do you know how many more times you talked to Mr. Pidgeon?

"*A.* Possibly two times and there was at least two different conversations.

"*Q.* But you, of your own accord, never went to any doctor even though you noticed that blurring of the eye, you never went to any doctor.

"*A.* No.

"*Q.* Were you able to do your work all right?

"*A.* I have done my work all right."

Sometime in the fall of 1943 Thompson got some dirt and sawdust in his right eye and noticed he could not see with his left eye when his right was closed. On November 30, 1944, when some foreign substance was removed from his right eye by Dr. William F. Strong, a physician for the lumber company, it was discovered that Thompson had no industrial vision in his left eye. He was then taken by Pidgeon to Dr. Lieberthal at Ironwood, and later sent to Dr. Hendrickson, who attributed the loss of vision to a "retinal detachment," which he said could be due to an injury. Thompson was later examined by several doctors of his own selection, including specialists at the University of Michigan hospital. Subsequent conversations between Thompson and of-

ficers of the defendant lumber company resulted in their denial of liability and his institution of the instant proceedings. Defendant based its denial of liability on the grounds that plaintiff's injury did not result from the accident of January 24, 1940, and, in any event, no claim for compensation was made by Thompson within the statutory period.

The department held that Thompson's injury was the result of the 1940 accident and that his claim for compensation had been seasonably made. Compensation of $12.92 per week, being two-thirds of his weekly wage of $19.38, was granted for the specific period of 150 weeks from November 30, 1944.

There is evidence to support the finding of the department that Thompson made his claim for compensation in May of 1940. Defendant lumber company had notice of the injury within three months after it happened, and there is testimony upon which the department based its findings that Thompson's oral claim was made to Pidgeon within six months after the occurrence of the injury. Thus the requirements of 2 Comp. Laws 1929, § 8431 (Stat. Ann. § 17.165), were satisfied.

Defendant contends that Thompson's loss of vision occurred in the fall of 1943. The department held, however, that the loss occurred on November 30, 1944. This was the date of the last injury to Thompson's right eye, for which he was afterwards treated by Dr. Strong.

An award based upon competent testimony must be affirmed on review by certiorari. *Cornish* v. *Jackson & Tindle, Inc.,* 285 Mich. 566, cited by appellants as controlling, is distinguishable, for the reason that the award in that case was reversed because the department's finding was totally unsupported by the evidence.

When Dr. Strong told Pidgeon in December of 1944 that Thompson had no vision in his left eye,

the requirements of 2 Comp. Laws 1929, § 8456 (Stat. Ann. § 17.191), as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8456, Stat. Ann. 1946 Cum. Supp. § 17.191), became applicable. This section reads:

"Every employer who is subject to the workmen's compensation act shall keep a record of all injuries causing death or disability of any employee arising out of and in the course of the employment, which record shall give the name, address, age, wages of the deceased or disabled employee, the time and cause of the accident, the nature and extent of the injury and disability, and such other information as the compensation commission may reasonably require by general order. Reports based upon this record shall be furnished to such commission at such times and in such manner as it may reasonably require by general order upon forms to be procured from such commission."

In accordance with this section, as amended, the commission adopted the following rule:[*]

"Employers subject to the workmen's compensation act must report to the commission on form 100 within 8 days after occurrence:
"1. Compensable injuries.
"2. Occupational diseases.
"3. Specific losses.
"4. Lost time injuries of one day more than the day or shift on which injury occurred."

Although defendant lumber company properly reported the 1940 injury on a noncompensable form, it was nevertheless required in 1944 to report Thompson's loss of vision after the accident on Novemner 30, 1944, when its employment personnel manager was informed by the company's doctor of this specific loss.

---

* Administrative Code 1944, p. 349.—Reporter.

The award is affirmed, with costs to appellee.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.